616 A.2d 894

Albert ABRAMSON et al.

v.

MONTGOMERY COUNTY, MARYLAND et al.

No. 35, Sept. Term, 1992.

Court of Appeals of Maryland.

Dec. 18, 1992.

**722**

Joseph V. Truhe (Miller, Miller, and Canby, Chtd., both on brief), Rockville, for appellants.

John J. Fisher, Asst. County Atty. (Joyce R. Stern, County Atty., both on brief), H. Christopher Malone, Sr. Asst. County Atty., Rockville, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

This case concerns the rights of a county to appeal an assessment of a taxpayer's property to the Maryland Tax Court under § 14–512 of the Tax–Property Article.[1] It arises in the context of the 1988 property tax assessment for the White Flint Mall, a major shopping center in Montgomery County. Before turning to the facts of the case, we briefly review the relevant aspects of the current property tax assessment system.

## I.

Real property is typically reassessed every three years, unless there are certain intervening circumstances such as zoning or use changes. § 8–104(b)–(c). Each county's Supervisor of Assessments has the responsibility of assessing all real property in the county subject to property tax. § 8–202.[2] Section 8–401(a) requires the Supervisor, an employee of the State Department of Assessments and Taxation, to provide the property owner with notice of any proposed change in the value or classification of real property. The notice must inform the owner of the right to appeal and must briefly describe the appeal process. § 8–401(c)(7). A person who receives notice under § 8–401 may protest the proposed assessment to the Supervisor within 45 days from the date of the notice. §§ 8–404 and 14–502(a). In addition, "any taxpayer, a county, a municipal corporation, or the Attorney General may submit a written appeal to the supervisor as to a value or classification in a notice of assessment on or before 45 days from the date of the notice." § 14–502(a).

Once an appeal is filed, the Supervisor must hold a hearing. §§ 14–502(c) and 8–405. Section 14–510(b) provides that the hearings are informal, and that "any party in interest may submit to the ... supervisor ... any informa-

---

1. All references herein are to Maryland Code (1986, 1992 Cum.Supp.), Tax–Property Article, unless otherwise noted.

2. Baltimore City is included in the defined term "county." § 1–101(g).

tion that bears on the appeal without regard to the technical rules of evidence." After the Supervisor holds the hearing and considers the evidence presented, the Supervisor issues a final notice of the assessed value of the property. § 8–407(a).[3] The final notice must notify the person who sought review of their right to appeal this final value or classification to the property tax assessment appeal board (PTAAB) where the property is located on or before 30 days from the date of the final notice. §§ 8–407(b) and 14–509(a). Any taxpayer, a county, a municipal corporation, or the Attorney General may also appeal an assessment to the PTAAB within the 30 day period. § 14–509(a).

The final administrative level of property tax appeal is the Maryland Tax Court which, despite its name, is an independent administrative arm of the state government. Maryland Code (1988), Tax–General Article, § 3–102. Section 14–512(f)(1) provides that any taxpayer, municipal corporation, the Attorney General, the Department, or the governing body of a county may appeal to the Tax Court within 30 days after the PTAAB issues its determination or provides appropriate notice as per the statute.

Any party to a Maryland Tax Court proceeding may appeal a final decision of the Tax Court to the circuit court for the county in which the property is located. § 14–513. Any party to a proceeding in the circuit court under § 14–513 may appeal a final decision of the circuit court to the Court of Special Appeals. § 14–515. Finally, this Court may issue a writ of certiorari to the Court of Special Appeals.

## II.

The facts in this case are straightforward. Taxpayers, the owners of the White Flint Shopping Mall in Montgom-

---

**3.** The instant case does not involve residential property. We note that residential property owners have the right to "not have an assessment increased during the current 3–year cycle because of information ascertained at an appeal hearing on residential property." § 1–402(9)(i).

ery County, received a proposed assessment for their property of $111,875,960 for the 1988 tax year. Pursuant to §§ 8–404 and 14–502, Taxpayers appealed to the Supervisor of Assessments for Montgomery County.[4] The Supervisor heard their appeal but affirmed the proposed assessment and issued a final notice pursuant to § 8–407. Within the 30–day statutory period, Taxpayers appealed to the Montgomery County PTAAB under § 14–509. Montgomery County became aware of the scheduled PTAAB hearing and notified the PTAAB by letter that it was a party in interest in the proceedings and intended to participate in the hearing.

At the PTAAB hearing, Taxpayers presented evidence that the proper value of the property was $109,000,000, while Montgomery County presented evidence that the property's proper value was $152,381,800. The Supervisor defended its original assessment of $111,875,960. On March 9, 1989, the PTAAB affirmed the Supervisor's original assessment. Taxpayers elected to take no further appeal, but Montgomery County appealed the PTAAB's decision to the Maryland Tax Court seeking an increase in the assessment. The County based its appeal on § 14–512(f)(1).

Taxpayers filed three separate motions challenging Montgomery County's standing to appeal to the Tax Court. All three motions were opposed by the County and denied by the Tax Court. On September 27, 1990, the Tax Court held a full evidentiary hearing. Taxpayers, through their appraiser, presented evidence to support a reduction in the assessment to $104,286,100. Montgomery County presented evidence through its appraiser to support an increase in

---

4. Under § 2–215, the State Department of Assessments and Taxation was required to notify Montgomery County of Taxpayers' appeal to the Supervisor, although the County claims it was never notified. Then-effective § 2–215 required the Department to notify the appropriate county legal officer of any assessment appeal filed with the Supervisor when the proposed value of the property exceeds $250,000. Section 2–215 has since been amended to increase this threshold to $2,000,000.

the assessment to $130,000,000. The Supervisor presented evidence to support the original $111,875,960 assessment. On March 27, 1991, the Tax Court issued an order increasing the property's value for assessment purposes to $130,000,000.

From the decision of the Tax Court, Taxpayers appealed to the Circuit Court for Montgomery County pursuant to § 14–513, contesting only the County's standing to appeal to the Tax Court. The Circuit Court (William C. Miller, J.) held that Montgomery County had standing to appeal and affirmed the judgment of the Tax Court. Taxpayers appealed from this decision to the Court of Special Appeals pursuant to § 14–515. We granted certiorari to consider the appropriateness of Montgomery County's appeal to the Tax Court before the intermediate appellate court could consider the issue. Md.Code (1974, 1989 Repl.Vol., 1992 Cum.Supp.), Courts & Judicial Proceedings Art., § 12–201.

### III.

The changing role of the counties in property tax assessment and appeals does not lend itself to concise description. It is fair to say, however, that the counties' power to determine assessments has progressively decreased over time, while their right to appeal assessments set by others has progressively increased.

In 1951, all real property in a county was assessed by the county commissioners, and in Baltimore City by an Appeal Tax Court. Former Md.Code (1951), Art. 81, §§ 12 and 28. The Supervisor of Assessments was responsible for conducting assessments and recommending assessment values to the county commissioners for their approval. *Id.* § 232. The county commissioners were also charged with hearing protests of these decisions, *id.* § 242, although they were empowered to appoint a county Appeal Tax Court to hear such protests. *Id.* § 243. Any taxpayer, city or the Attorney General could appeal an assessment to the county commissioners, or to the Appeal Tax Court where one was

created. *Id.* § 251. Any taxpayer, city, the Attorney General, or a Supervisor of Assessments "claiming to be aggrieved" by a decision of the county commissioners or Appeal Tax Court could appeal to the State Tax Commission. *Id.* § 252. The counties had no right of appeal at these levels because they themselves were establishing the assessments. As for appeals from the decisions of the State Tax Commission, which the counties did not control, any taxpayer, city, the Attorney General, *as well as* the county commissioners could appeal from a State Tax Commission decision to the Circuit Court or to the "Baltimore City Court of Baltimore City." *Id.* § 255. Thus, the counties' interests were fully represented at all levels of the assessment and appeals process.

In 1959, the General Assembly replaced the State Tax Commission with the State Department of Assessments and Taxation (SDAT) and the Maryland Tax Court. Chapter 757 of the Acts of 1959, § 247A. The powers of the county commissioners over initial assessments were transferred to the Supervisors of Assessments in the counties and the Department of Assessments in Baltimore City, under the supervision of the SDAT. Former Md.Code (1957, 1960 Cum.Supp.), Art. 81, §§ 13 and 232. The county commissioners, or their duly created Appeal Tax Courts, and the Board of Municipal and Zoning Appeals in Baltimore City still heard assessment appeals. *Id.* § 255(b). Any taxpayer, any city, the State, or Supervisors of Assessments could appeal from a decision of these local "final assessing authorities" to the Maryland Tax Court. *Id.* § 256(a). County commissioners also were given the right to appeal to the Maryland Tax Court from any decision of a local Appeal Tax Court. *Id.* § 256(a).

In 1973, the General Assembly created Property Tax Assessment Appeal Boards (PTAABs) in each county. It removed the jurisdiction of the county commissioners over appeals and gave the power to hear appeals from Supervisors' assessments to the newly-created PTAABs. Ch. 784 of the Acts of 1973, § 255(b). Apparently realizing that the

combined effect of its 1959 and 1973 actions was to completely shut the counties out of the initial assessment process and the first two levels of appeal (to the Supervisor and the PTAAB) the General Assembly in 1976 gave the counties the right to appeal both to the local Supervisor and to the PTAAB. Ch. 495 of the Acts of 1976, § 255(a)–(b). Although counties no longer had authority to set assessments, their interests were adequately protected by their right to appeal to all three administrative levels of the assessment process—the Supervisor, the PTAAB, and the Tax Court.[5] In 1985, the General Assembly recodified these provisions in the new Tax–Property Article, which controls the case now before us.

## IV.

Section 14–512(f)(1) of the Tax–Property Article addresses appeals to the Maryland Tax Court from PTAAB decisions. It provides:

"(f) *Appeals from property tax assessment appeal board; exhaustion of administrative remedies.*—(1) Any taxpayer, a municipal corporation, the Attorney General, the Department, or the governing body of a county may appeal a determination made by a property tax assessment appeal board under § 14–509(a) or (b) of this subtitle to the Maryland Tax Court."

In this language, Taxpayers perceive that Montgomery County's right to appeal to the Tax Court is conditioned on its being "aggrieved" by the decision of the PTAAB. Although the statute makes no reference to whether a party must be "aggrieved," Taxpayers find this requirement in

---

5. From 1973 to 1978, the counties' right to appeal to the Tax Court from PTAAB decisions was a bit muddied, because the 1973 Act which replaced the local Appeal Tax Courts with the PTAABs failed to make the substitution in § 256 regarding appeal to the Tax Court. Thus, for this period, the counties could technically appeal only from Appeal Tax Court decisions, a body which no longer existed. In 1978, the General Assembly amended § 256 and replaced references to the Appeal Tax Court with references to the PTAAB. Chapter 577 of the Acts of 1978.

the predecessor statute to § 14–512(f)(1), former Article 81, § 256, which provided:

"**§ 256. Appeals to Maryland Tax Court from property tax assessment appeal board.**

(a) *In general.*—Any taxpayer, any city, or the Attorney General or Department on behalf of the State, or a supervisor of assessments ... or the county commissioners of any county, or on behalf of any chartered county, by either the county council or, if the office exists, by the county executive, *claiming to be aggrieved* because of any assessment or classification, or because of any [enumerated actions of the PTAAB], may by petition appeal to the Maryland Tax Court...." (Emphasis added).

Because the Revisor's Note to current § 14–512(f) provides that it is derived "without substantive change" from former § 256, Taxpayers claim that the requirement that a party must be "aggrieved" by the PTAAB's decision should be read into current § 14–512(f)(1).

Although we have not previously addressed whether a party need be "aggrieved" under § 14–512(f)(1), we have addressed the aggrievement requirement in another statutory context. In *Boulden v. Mayor,* 311 Md. 411, 535 A.2d 477 (1988), we construed Md.Code (1957, 1983 Repl.Vol.), Art. 66B, § 4.08(a) dealing with who may appeal to the circuit court from a local board of zoning appeals decision. Section 4.08(a) provides:

"*Any person or persons,* jointly or severally, aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body, *or any taxpayer, or any officer, department, board, bureau* of the jurisdiction, may appeal the same to the circuit court of the county...." (Emphasis added).

Chief Judge Murphy, writing for the Court, concluded that although the statute required "any person or persons" to be "aggrieved," the location of the disjunctive "or" in the statute meant that taxpayers and other parties following the word "or" were not subject to the requirement. *Id.* at 414, 535 A.2d at 479. We thus refused in *Boulden* to read

in the word "aggrieved" where it did not exist, and Montgomery County encourages us to refuse to do so in the similar circumstances of the instant case. *See id.* at 415 n. 3, 535 A.2d at 479 n. 3. The presence of the Revisor's Note, though, indeed creates some ambiguity. Nonetheless, we need not resolve this ambiguity today, because even if the statute is read to require that an appellant be "aggrieved," we believe Montgomery County met the requirement in this case.

## V.

■ On the question of who is "aggrieved," Taxpayers contend that the county may become "aggrieved" by a PTAAB decision in one of only two ways. First, if a county timely appeals a Supervisor's final assessment to the PTAAB and asks for an increase, which request the PTAAB rejects, the county is "aggrieved" by the rejection. Second, Taxpayers contend a county may be "aggrieved" *without* timely appealing to the PTAAB only if the PTAAB reduces a Supervisor's assessment after a taxpayer's timely appeal. Taxpayers argue that where a county fails to file a timely appeal and the PTAAB merely affirms the Supervisor's decision, as is the case here, the PTAAB's action cannot "aggrieve" the County because it is left in no worse position than when the hearing began. Because the Montgomery County PTAAB merely affirmed the Supervisor's assessment of $111,875,960, rejecting Taxpayers' request for a decrease, Taxpayers claim Montgomery County cannot be "aggrieved" by the PTAAB's decision.

Montgomery County makes three alternative arguments as to why it is entitled to appeal to the Tax Court. First, it contends that the plain language of § 14–512(f)(1), which makes no explicit reference to an "aggrieved" status, renders it a so-called "super-plaintiff" able to appeal to the Tax Court regardless of who appeared or what transpired before the PTAAB. Second, Montgomery County argues that even though it did not file its own timely appeal, it was an "intervenor" in the PTAAB proceeding and, as such, ac-

quired the full rights of a party including the right to appeal, regardless of whether it was "aggrieved." The County bases this view principally on *Montgomery County v. Supervisor,* 275 Md. 58, 337 A.2d 679 (1975), where we affirmed the Tax Court's grant of the county's motion to intervene in a property tax appeal which made the County "a party ... with all rights incident thereto." *Id.* at 62, 337 A.2d at 681. Finally, Montgomery County argues that even if the key to a party's right to appeal is whether it is "aggrieved" by the PTAAB's decision, the fact that it submitted evidence to the PTAAB supporting a higher assessment, and the fact that the PTAAB ultimately rejected this evidence and affirmed the Supervisor's proposed assessment, rendered it sufficiently "aggrieved" to appeal to the Tax Court.

Because of our conclusion below that Montgomery County was sufficiently "aggrieved" by the PTAAB decision to enable it to appeal to the Tax Court, we need not reach the County's first argument, whether a county is a "super-plaintiff" able to appeal to the Tax Court without regard to the earlier proceedings. We also need not determine whether Montgomery County's participation in the PTAAB hearing gave it "intervenor" status which would allow it to appeal regardless of whether it was "aggrieved." We might note that Montgomery County could have "intervened" in the more formal proceedings of the Tax Court and circuit court regardless of what happened at the PTAAB had the taxpayer appealed to the Tax Court or circuit court, *Montgomery County v. Supervisor,* 275 Md. 58, 62, 337 A.2d 679, 681 (1975) (Tax Court properly permitted county to intervene in tax appeal); *Maryland Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 30 Md.App. 712, 718, 354 A.2d 459, 462 (1976) (State as well as county should have been permitted to intervene in property tax dispute in circuit court), *rev'd on other grounds,* 282 Md. 588, 386 A.2d 1216 (1978) (reversing on issue of enforceability of contract clause waiving right to challenge future tax assessments). A PTAAB hearing is,

however, "informal." § 14–510(b); *see also* COMAR 14.10.-01.05(E)(1) ("The [PTAAB] Board shall conduct the hearing in an informal manner."); § 14–510(b) ("[a]ny party in interest may submit to the [PTAAB] at a hearing any information that bears on the appeal without regard to the technical rules of evidence."). Montgomery County clearly had the right to participate in the PTAAB's informal proceedings, and did so, whether or not it was formally designated an "intervenor." [6] That participation, along with the fact that the county was otherwise "aggrieved," permits the County to appeal to the Tax Court regardless of what label is placed on its status at the hearing.

In determining what makes a party "aggrieved" for the purposes of a property tax appeal, we first note that property taxes are unusual in that many parties may have a stake in the amount of an individual taxpayer's tax bill. Nearly half a century ago, for example, we recognized that a taxpayer may complain of underassessment of property owned by other taxpayers, under the theory that underassessment of one property necessarily increases the tax burden on neighboring taxpayers. *Anne Arundel County v. Buch*, 190 Md. 394, 399–400, 58 A.2d 672, 674–75 (1948). "Aggrieved" status in the context of property tax appeals resembles "aggrieved" status in zoning matters. *See* Md.

---

**6.** Montgomery County could have exercised its right to be heard by the PTAAB either by filing its own appeal or by submitting evidence at the Taxpayers' appeal. The advantage to the County of filing its own appeal is that it could present its evidence to the PTAAB without regard to the Taxpayers' actions. By failing to file an appeal, and instead seeking to present evidence at the Taxpayers' appeal, the County took the risk that the Taxpayer might dismiss the appeal before the presentation of testimony. *See* COMAR 14.10.01.05(D)(4) ("[a] petition for appeal may be withdrawn at any time before the presentation of testimony at the hearing."). If the Taxpayers had decided to dismiss prior to presenting testimony, there would have been no PTAAB hearing at which the County could have submitted evidence. If a County files a timely appeal, a county has an independent, unfettered right to present evidence to the PTAAB. If a county neglects to file a timely appeal, it may submit evidence in support of its position only if the party who brought the appeal chooses to proceed with the PTAAB hearing.

Code (1957, 1988 Repl.Vol.), Art. 66B, § 4.08(a) ("Any person . . . aggrieved by any decision of the [zoning] board of appeals . . . may appeal the same to the circuit court of the county"). There is a long and well-established line of cases addressing the meaning of "aggrieved" in the zoning context which focuses upon the impact of the administrative action on the party seeking to appeal. To render a party "aggrieved," a zoning decision must affect a matter in which the party has a personal or property right. The "aggrieved" party must also suffer some special damage, different from that suffered by the public generally. *Bryniarski v. Montgomery County Bd. of Appeals*, 247 Md. 137, 144, 230 A.2d 289, 294 (1967).

Applying these principles here, we cannot imagine a party, other than the Taxpayers in this case, with a greater interest in the result of the appeal or a greater susceptibility to special damage than Montgomery County. We have previously noted that "a very substantial portion of [a county's] revenue is derived from [property] tax." *Montgomery County v. Ian Corp.*, 282 Md. 459, 462, 385 A.2d 80, 82 (1978). In the case of White Flint Mall, under the current tax rates, the difference between the tax raised from the Supervisor's proposed assessment and from the County's proposed assessment is over $200,000.[7] Taxpayers themselves concede a county's "obvious stake in tax revenues." Thus, a county has a unique and important interest in the disposition of property tax appeals. We therefore hold that a county which submits evidence supporting a higher assessment at a taxpayer-initiated PTAAB appeal may appeal to the Tax Court from the PTAAB's decision which rejects its evidence and affirms the Supervi-

---

7. The current "weighted" (or average) tax rate for Montgomery County is $2.80 per $100 of assessed value. The assessed value equals 40% of the full value for assessment purposes. The difference between the Supervisor's proposed full value of $111,875,960 and the County's proposed full value of $130,000,000 is $18,124,040. Multiplied by 40% and by the tax rate, the result is $202,989 which Montgomery County stood to lose by accepting the Supervisor's assessment.

sor's proposed assessment. This right is, of course, in addition to a county's undisputed right to appeal from a PTAAB's decision which reduces a Supervisor's proposed assessment regardless of whether it appeared or submitted evidence below.[8]

■ Underlying our conclusion that the County was "aggrieved" is the premise that the PTAAB could have increased the assessment in response to a county's submission of evidence at a taxpayer-initiated appeal. There must be relief available to the county at the PTAAB, the denial of which would give the county cause to complain. Taxpayers argue that the PTAAB has no such power to increase the assessment at the taxpayer's appeal upon the County's request. They insist that a PTAAB may increase an assessment only upon a timely filed appeal asking for an increase. For this argument, Taxpayers rely on an Attorney General's opinion, 70 *Op.Att'y Gen.* 22 (1985), addressing the threshold question of whether the PTAAB could *ever* increase assessments and, if so, under what circumstances. The Attorney General concluded that the PTAAB was empowered to increase assessments, but did *not* have the authority to do so *sua sponte. Id.* at 25.

Taxpayers construe the Attorney General's opinion to mean that "the [PTAAB] has the power to increase an assessment only pursuant to a demand for such relief by a party, including a county, which took a timely appeal from the supervisor's assessment." We believe this is too narrow an interpretation of the Attorney General's opinion, and an incorrect statement of the law in any case. In the opinion, the Attorney General points out by example what

---

8. This case does not present the broader question of whether a county which has neither appeared at nor submitted evidence to a PTAAB can appeal to the Tax Court to seek an increased assessment. We have previously noted, however, that even Taxpayers concede the County could appeal if the PTAAB reduced the assessment. *Cf. County Exec. for Montgomery County v. Supervisor,* 275 Md. 64, 65, 337 A.2d 682, 683–84 (1975) (acknowledging County's right to appeal to the Maryland Tax Court from County Appeal Tax Court decision reducing Supervisor's assessment).

the PTAAB *cannot* do. If a taxpayer whose property is assessed at $100,000 appeals to the local PTAAB arguing that the property should be assessed at $50,000, the Supervisor would presumably present evidence supporting the original $100,000 assessment. Under these circumstances, the PTAAB could not unilaterally increase the assessment to $125,000. 70 *Op.Att'y Gen.* at 27–28. While a PTAAB may not have the power to increase an assessment unilaterally, as in the above example, it does have the power to increase an assessment when a party properly before it asks it to do so. That is the case here, because Montgomery County properly appeared at the PTAAB hearing, without any objection by Taxpayers, and presented evidence supporting a higher assessment.[9] We do not read the Attorney General's opinion as saying that the PTAAB can increase an assessment only upon a timely filed appeal seeking an increase, but rather that a PTAAB cannot *sua sponte* increase an assessment at a hearing where only the taxpayer and Supervisor appear and where there is no evidence to support an assessment higher than the Supervisor's. If a county has properly submitted evidence of a higher assessment, the PTAAB's increase in assessment is not *sua sponte;* it is instead at the request of a party in interest. If the PTAAB is persuaded that the county's evidence warrants an increase, then it is statutorily authorized to increase the assessment. *See id.* at 28. The Montgomery County PTAAB thus had the power to increase the assessment at the Taxpayers' PTAAB hearing, and the County was adequately "aggrieved" by the PTAAB's refusal to do so upon its submission of evidence supporting a higher assessment.

---

9. We note that there might be some due process considerations if the Taxpayers had no notice that Montgomery County was intending to present evidence supporting a higher assessment. The record does not indicate an objection for lack of notice by Taxpayers at any point in the proceedings. Therefore, we will assume adequate notice was given or was waived.

## VI.

■ Finally, we address both parties' arguments on a distinct issue, the requirement of exhaustion of administrative remedies. Taxpayers raise the Code requirement that "[u]nless *a person* has exhausted all available administrative remedies before the appropriate tax determining agency, the person may not appeal to the Tax Court." (Emphasis added).

Md.Code (1988, 1992 Cum.Supp.), Tax–General Art. § 13–514. Section 1–101(p)(2) of the Tax–General Art. clearly defines the word "person" as excluding governmental entities unless there is express provision otherwise. Taxpayers nonetheless contend that this explicit exclusion of counties from the exhaustion requirement of § 13–514 occurred through "an error in the revision" of the Code, one which we should correct.

■ Taxpayers note that Tax–General § 13–514 was derived from former Art. 81, § 230 "without substantive change," according to the Revisor's Notes accompanying the statute. Former § 230 required exhaustion of remedies by any "party" seeking to appeal, rather than any "person," and we have previously implied that a county was a "party" under former § 230. *See County Exec. for Montgomery County v. Supervisor*, 275 Md. 392, 395 n. 5, 340 A.2d 246, 248 n. 5 (1975) (observing that there was no contention that the county failed to exhaust its administrative remedies "as required by ... § 230"). Taxpayers contend that since present Tax–General § 13–514 is a recodification of former § 230 ostensibly "without substantive change," we must consider the new term "person" in § 13–514 to be identical to the old term "party" in § 230 and consider a county a "person" under § 13–514—despite the fact that counties are excluded from the current definition. When interpreting a statute's provisions, our goal is to ascertain and effectuate the intention of the legislature. *Mustafa v. State*, 323 Md. 65, 73, 591 A.2d 481, 484–85 (1991). When a statute's language is clear and unambiguous, however, we need look no further for some hidden legislative intent. *Management*

*Personnel Servs. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984). Where the legislature in Tax–General § 1–101(p)(2) clearly excluded governmental units from the definition of "person" as used in Tax–General § 13–514, we will not alter the clear language of the statute. This conclusion is further supported by a reading of Tax–General § 13–510(a), which governs appeals to the Tax Court for non-property tax assessments. Section 13–510(a) of the Tax–General Art. provides that "a person or governmental unit ... may appeal to the Tax Court...." That the section refers to both a "person" and a "governmental unit" is a clear indication that the General Assembly intended a governmental entity and a "person" to be non-overlapping terms in this context.

Montgomery County's perspective on the exhaustion issue focuses on yet another statutory provision, § 14–512(f)(3) of the Tax–Property Article. Section 14–512(f)(3) provides that

> "[u]nless a taxpayer previously appealed as required by § 14–502 or § 14–503 of this subtitle to a property tax assessment appeal board, the taxpayer may not appeal to the Maryland Tax Court under this subsection."

Montgomery County uses the fact that the statute's terms only restrict a taxpayer's appeal to bolster its argument that its own right to appeal to the Tax Court is unrestricted. Not surprisingly, Taxpayers have quite a different view, contending that despite its reference to taxpayers alone, § 14–512(f)(3) actually restricts the appeals of *all* parties who have not previously appealed to the PTAAB.[10] Taxpayers' argument is based on the legislative history of § 14–512(f)(3). They again point out that, according to the Revisor's Note, § 14–512(f) was derived "without substantive

---

**10.** There is at least one additional ambiguity in § 14–512(f)(3). A literal reading might indicate that a taxpayer who did not protest his or her original assessment, but whose assessment was increased by the PTAAB on a timely appeal by a county, would be prevented from appealing the increase to the Tax Court. Accepting Taxpayers' view, however, would not resolve this particular ambiguity.

change" from former Art. 81, § 256. Former § 256(a) provided, in part:

"An appeal on behalf of a taxpayer [to the Tax Court] may not be allowed under this section from a failure or refusal to abate, reduce, or reclassify an existing assessment unless application in writing for the action has been filed by the appellant with the [PTAAB] appealed from within the time limited for the filing of a demand for a hearing by § 255 of this article [providing for appeal from the Supervisor's decision to the PTAAB]."

This language dates to before 1959, when the counties had no right of appeal to the Tax Court's predecessor, the State Tax Commission. From this fact, Taxpayers reach the inescapable conclusion that because the counties had no right of appeal at all when the exhaustion provision was enacted, the provision could not have been intended to exclude counties from its requirement. They insist, however, that if counties had been given the right to appeal to the Tax Court, the exhaustion provision would have applied equally to them. This conclusion is unsupported by a reading of the former § 256.

When the legislature amended former § 256 in 1959 to give counties the right to appeal to the newly-created Tax Court from decisions of the local Appeal Tax Courts, the legislature retained the language which restricted only taxpayer appeals. Ch. 757 of the Acts of 1959. The legislature retained the language when it again amended § 256 in 1978 to give counties the right to appeal to the Tax Court from the PTAABs. Ch. 577 of the Acts of 1978. To us, this means that the legislature, upon seeing fit to grant the counties the right to appeal to the Tax Court, also saw fit not to extend the exhaustion requirement to the counties. Had the legislature wanted to subject counties to the exhaustion provision, it would have amended the exhaustion provision at either time it addressed the counties' right to appeal. That the legislature did not do so is sufficient evidence of its intent to apply the exhaustion requirement of § 14–512(f)(3) to taxpayers and taxpayers alone.

## VII.

In conclusion, for the reasons discussed above, we affirm the judgment of the circuit court and hold that Montgomery County could appeal to the Tax Court seeking an increase in Taxpayers' property tax assessment.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.