784 A.2d 534

MARYLAND DIVISION OF LABOR AND INDUSTRY

v.

TRIANGLE GENERAL CONTRACTORS, INC.

No. 25, Sept. Term, 2001.

Court of Appeals of Maryland.

Nov. 6, 2001.

408

Gaston J. Sigur, III, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Md., on brief), Baltimore, for appellant.

Marvin Mandel (Marvin Mandel, P.C., on brief), Annapolis, for appellee.

Gabriel A. Terrasa, Albertini, Singleton, Gendler & Darby, LLP, Owings Mills, Amicus Brief in support of appellant by Baltimore Bldg. and Constr. Trade Council, AFL–CIO.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

Following an evidentiary hearing before an administrative law judge (ALJ) of the Maryland Office of Administrative Hearings (OAH), a Proposed Decision was issued recommending that Appellee, Triangle General Contractors, Inc., the general contractor on a public works project, pay restitution to three employees of one of its subcontractors, Irocc Masonry, Inc. ("Irocc"), and liquidated damages to the contracting public body for Irocc's violations of the Maryland Prevailing Wage Act, Maryland Code (1988, 1995 Repl. Vol.), State Finance and Procurement Article, §§ 17–201–17–226. On 1 September 1998, the Maryland Deputy Commissioner of Labor and Industry ("the Commissioner") issued a Final Decision and Order adopting the Proposed Decision.

Appellee sought judicial review by the Circuit Court for Anne Arundel County. On 26 October 2000, the Circuit Court affirmed that part of the decision of the Commissioner holding Appellee liable to the public body for liquidated damages, but reversed the decision of the Commissioner regarding restitution, finding that Appellee was not liable for restitution to Irocc's employees. Appellant, the Maryland Division of Labor and Industry, filed an appeal to the Court of Special Appeals. We issued a writ of certiorari on our own initiative while the case was pending in the Court of Special Appeals, *Maryland Div. of Labor and Indus. v. Triangle General Contractors, Inc.*, 364 Md. 139, 771 A.2d 1069 (2001), to consider the following question:

> Whether the Circuit Court erred in concluding a general contractor is not jointly liable for the wage violations of its subcontractor under Maryland Code (1988, 1995 Repl. Vol.), State Finance and Procurement Article, § 17–222(b).

## I.

### A. Relevant Factual Record

Appellee, Triangle, was the general contractor on a state-funded project erecting the "Computer & Space Sciences Building" at the University of Maryland at College Park. Irocc

was Triangle's initial masonry subcontractor on that project. On 31 December 1991, pursuant to Maryland Code (1988, 1995 Repl. Vol.), State Finance and Procurement Article, §§ 17–208 and 17–211 [1], Appellant's Commissioner issued a determination of the prevailing wage rates for the project.[2] These prevailing wage rates applied to all employees working on the project, including those of Triangle, Irocc, and the other subcontractors.

In the Summer of 1994, Mr. James C. Dugent, an investigator for the Maryland Division of Labor and Industry, began visiting the site weekly at the University of Maryland to verify that the employees on the job were working in the correct classifications and to ensure they were being paid the prevailing wage rate for their classifications. In October of 1994, Mr. Dugent learned from Mr. Cesar Rivera of the Coalition of Fair Contracting, Inc. (a union-related organization), that some of Irocc's employees' paychecks were bouncing and, important to this appeal, that Irocc may not be paying some of its employees the proper prevailing wage.

On 1 June 1995, Mr. Dugent sent a letter to Irocc, with a carbon copy to Appellee, informing Irocc that his investigation revealed "[t]he contractor and/or subcontractor is delinquent in submitting payroll records [and] ... has allegedly underpaid employee [Mr. Antonio Pena]." [3] The letter requested a photo-copy of the employee's restitution check and an $1,210

---

**1.** Unless otherwise provided, all statutory references are to sections within Maryland's Prevailing Wage Act, codified at Maryland Code (1988, 1995 Repl. Vol.), State Finance and Procurement Article, §§ 17–201–17–226.

**2.** The prevailing wage rate determination identified the classification of workers on the project, the basic hourly rate for that classification, and any applicable fringe benefit payments under that classification.

**3.** At some point between October 1994 and June 1995, Irocc declared bankruptcy and left the job site. F & S Contracting, Inc. replaced Irocc on the job site and retained some former Irocc employees, including one Francisco Pena. Mr. Francisco Pena initiated a suit in December 1996 in the District Court of Maryland, sitting in Montgomery County, against F & S Contracting, Inc. and Appellee seeking restitution for

check for liquidated damages for "late payrolls and misclassification of employee." [4] Mr. Dugent did not receive a response to that letter from Irocc or Appellee. On 20 September 1995, Mr. Dugent sent another letter to Irocc, with a carbon copy to Appellee, informing Irocc that "[t]he contractor and/or subcontractor is delinquent in submitting payroll records [and] . . . has allegedly underpaid employee[s] [Mr. Antonio Pena and Mr. Francisco Pena]." He requested copies of the restitution checks provided to both employees, together with liquidated damages. Again, Mr. Dugent received no response from Irocc or Appellee.

On 31 January 1996, the Commissioner, pursuant to § 17–221(g) [5], sent notice to Appellee and Irocc informing them of the facts disclosed by Mr. Dugent's investigation (which now included 3 former Irocc employees—Antonio Pena, Francisco Pena, and Fernando Gomez—who assertedly had not been paid the appropriate prevailing wage), including a calculation of the restitution and liquidated damages owed under § 17–222 [6], and notifying them that an administrative hearing would

---

prevailing wage violations occurring between 11 October 1995 and 27 December 1995. Under § 17–224, an employee "is entitled to sue to recover the difference between the prevailing wage rate and the amount received by the employee." That suit apparently remained pending at the time of oral argument of the present case in this Court.

**4.** The letter from Mr. Dugent requested liquidated damages for the late submission of payroll *and* for the wage rate violations. It should be noted, however, that the Proposed Decision of the ALJ, the Final Decision and Order of the Commissioner, and the judgment of the Circuit Court assessed liquidated damages only for the wage rate violations. In all three proceedings, liquidated damages in the amount of $1,960 were assessed, calculated at $10 a day for the 196 days on which the employees were underpaid.

**5.** Section 17–221(g) provides:
(1) At least 10 days before the hearing, the Commissioner shall serve, personally or by mail, written notice of the hearing on all interested persons, including the public body.
(2) The notice shall include:
(i) a statement of the facts disclosed in the investigation; and
(ii) the time and place of the hearing.

**6.** Section 17–222 provides:

be held on the charges at the "earliest possible date." The State subsequently withheld from its payments due to Appellee the contested amounts, as provided for under § 17–221(e).[7]

## B. Procedural History

In accordance with COMAR 21.11.11.04B, Appellant's Commissioner delegated his hearing responsibility, granted under § 17–221(h), to the OAH. On 14 August 1996, 1 April and 2 April 1997, a hearing was held before an ALJ of the OAH. On 1 July 1997, the ALJ issued a Proposed Decision concluding "that Irocc Masonry, Inc. violated [the Prevailing Wage Act] by submitting inaccurate payroll records [8] and failing to pay

---

(a) *Liquidated damages.*—A contractor under a public work contract is liable to the public body for liquidated damages of $10 for each laborer or other employee for each day for which:

 (1) the laborer is paid less than the prevailing wage rate of a mechanic while performing a task required to be performed by a mechanic or mechanic's apprentice; or

 (2) the employee is paid less than the prevailing wage rate.

(b) *Restitution.*—If a contractor or subcontractor pays an employee less than the amount the employee is entitled to receive for the work performed, the contractor or subcontractor shall make restitution to the employee.

7. Although it was not made explicit in the parties' briefs or at oral argument, the record reveals the State apparently withheld from monies due Appellee the sums claimed for Irocc's violations. In Appellee's "Motion to Stay Execution of Administrative Order" filed in the Circuit Court on 23 September 1998, it noted that, "[p]ursuant to Section 17–221(e) ..., the State withheld certain monies due to [Appellee] on the project in order to pay any award entered in this matter," and explained that "[p]ursuant to Section 17–221(h), the State will make payment to the workers in the amount of the award unless this stay is granted." Additionally, in its "Motion to Shorten Time Requirement" filed in the Circuit Court on the same day, Appellee explained that "the State has already withheld sufficient monies from [Appellee]." There is no document in the record providing the date on which the State withheld money from Appellee, nor the amount of money withheld. Appellee indicates, however, that the State operated pursuant to § 17–221(e). Reading that section, we assume it withheld payment "[o]n notification" from the Commissioner, in "an amount sufficient to ... pay each employee of the contractor or subcontractor the full amount of wages due under this subtitle ... and ... satisfy a liability of a contractor for liquidated damages ... [under] this subtitle." § 17–221(e).

8. The practice was for Irocc to prepare and submit the required wage verification information for its employees, under certification by its

employees the prevailing wage for their classifications," and recommending that Appellee *or* Irocc pay restitution to Antonio Pena, Francisco Pena, and Fernando Gomez (the former employees of Irocc), and that Appellee pay liquidated damages to the public body for Irocc's violations of the prevailing wage statute. Appellee filed exceptions to this decision with the Commissioner pursuant to COMAR 21.11.11.04E(3). On 1 September 1998, the Commissioner issued a Final Decision and Order adopting the Proposed Decision, but modified the ultimate conclusion to require Triangle *and* Irocc to pay restitution and liquidated damages.

Appellee then filed an action for judicial review in the Circuit Court for Anne Arundel County. On 26 October 2000, the Circuit Court issued a Memorandum Opinion and Order affirming in part and reversing in part the decision of the Commissioner. The Circuit Court affirmed the decision that Appellee was liable to the public body for liquidated damages under § 17–222(a) (rendering "[a] contractor" liable for liquidated damages), finding "[t]he evidence established that ... three employees were underpaid for a period of 196 days." Finding merit in Triangle's legal argument that § 17–222(b) (rendering "a contractor or subcontractor" responsible for restitution) only makes liable for restitution the actual employer of the workers not paid the prevailing wage, the Circuit Court reversed the decision of the Commissioner regarding restitution, holding that Appellee was not liable for restitution to Irocc's employees.

Appellant filed an appeal in the Court of Special Appeals. On 9 May 2001, we issued a writ of certiorari on our own motion while the case was pending in the Court of Special Appeals.

---

President, to Triangle which, in turn, prepared and submitted the wage information for its employees, together with what Irocc supplied, to the State.

## II.

### A.

We review an administrative agency's decision "under the same statutory standards as the Circuit Court." *Gigeous v. E. Corr. Inst.*, 363 Md. 481, 495, 769 A.2d 912, 921 (2001) (footnote omitted). Therefore, "we reevaluate the decision of the agency, not the decision of the lower court." *Gigeous*, 363 Md. at 495–96, 769 A.2d at 921 (citing *Public Serv. Comm'n v. Balt. Gas & Elec. Co.*, 273 Md. 357, 362, 329 A.2d 691, 694–95 (1974)). In reviewing an administrative agency decision, we are " 'limited to determining if there is substantial evidence in the record as a whole to support the agency's finding and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999) (quoting *United Parcel Serv., Inc. v. People's Counsel for Baltimore County*, 336 Md. 569, 577, 650 A.2d 226, 230 (1994)). In applying the substantial evidence test to questions of fact,

a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court 'must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence.

*Banks*, 354 Md. at 68, 729 A.2d at 380–81 (alterations in original) (citations omitted).

Even "with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Banks*, 354 Md. at 69, 729 A.2d at 381 (citing *Lussier v. Md. Racing Comm'n*, 343 Md. 681, 696–97,

684 A.2d 804, 811–12 (1996); *McCullough v. Wittner,* 314
Md. 602, 612, 552 A.2d 881, 886 (1989) ("The interpretation
of a statute by those officials charged with administering the
statute is ... entitled to weight.")). Moreover, the "exper-
tise of the agency in its own field should be respected." *Id.*
(citations omitted). Nevertheless, "when a statutory provi-
sion is entirely clear, with no ambiguity whatsoever, 'admin-
istrative constructions, no matter how well entrenched, are
not given weight.'" *Banks,* 354 Md. at 69 n. 2, 729 A.2d at
381 n. 2 (quoting *Macke Co. v. Comptroller,* 302 Md. 18, 22–
23, 485 A.2d 254, 257 (1984)). *See also State Dept. of As-
sessments and Taxation v. Greyhound Computer Corp.,* 271
Md. 575, 589, 320 A.2d 40, 47 (1974) ("[T]he unvarying con-
struction of law by the agency charged with its enforcement
over a long period of time ... cannot override the plain
meaning of the statute or extend its provisions beyond the
clear import of the language employed.").

### B.

The Commissioner, in his Final Decision and Order, held
Appellee liable for liquidated damages and restitution under
§ 17–222(a) and (b), respectively, for its subcontractor's direct
violations of the Prevailing Wage Act. The Commissioner read
§ 17–222(a) as clearly requiring "a general contractor to pay
liquidated damages for underpayment 'to each laborer or
other employee ...,'" regardless of who the laborer's or
employee's actual employer was, and found, in effect, Appellee
strictly liable for restitution under § 17–222(b).

The Circuit Court affirmed the Commissioner's decision
finding Appellee liable for liquidated damages [9], but reversed
that part of the decision holding Appellee liable for restitution.
In so doing, the Circuit Court determined that § 17–222(b) of
the State Finance and Procurement Article does not impose
joint or strict liability for restitution on a contractor for the
wage underpayments by its subcontractor for the subcontrac-

---

**9.** As Triangle did not file a cross-appeal from the Circuit Court's
judgment that Triangle was liable for liquidated damages, we do not
consider that determination in this appeal.

tor's employees. Rather, the court read § 17–222(b) as imposing liability on either the contractor or subcontractor, depending on which violated the prevailing wage requirements as to its respective employees.

Appellant urges us to adopt the Commissioner's decision and contends that the Circuit Court erred in its interpretation of § 17–222(b). Appellant argues that, based on the purpose [10] and legislative history [11] of the Prevailing Wage Act, and on a reading of the subtitle as a whole, § 17–222(b) imposes liability on a general contractor for restitution to its subcontractor's employees. Appellee believes the Commissioner erred in his reading of § 17–222(b), and therefore urges us to affirm the decision of the Circuit Court. Triangle maintains that the "language of the statute is clear and unambiguous," and argues that "it is clear that the contractor or subcontractor have individual responsibility" for restitution only to their respective employees under § 17–222(b). We agree with Appellee and therefore affirm the judgment of the Circuit Court.

## C.

In 1988, in culmination of a lengthy code revision process, the Prevailing Wage Act was recodified as §§ 17–201–17–226

---

**10.** Appellant directs our attention to *Barnes v. Comm'r of Labor & Indus.,* 45 Md.App. 396, 403, 413 A.2d 259, 264 (1980), *aff'd,* 290 Md. 9, 427 A.2d 979 (1981), where the purpose of the Act was described as "to protect local contractors and workmen against what was deemed to be unfair and predatory competition from outsiders...." We fail to see how that purpose is implicated by the undisputed facts of the present case or the issue as framed by Appellant.

**11.** The addition of the words "or subcontractor" in the restitutionary scheme of the Prevailing Wage Act occurred in 1988. *See* Chapter 48, § 2 of the Acts of 1988. Appellant argues that this change, occurring as part of a code revision or recodification of the State Finance and Procurement Article, did not work a substantive change in the statutory scheme which previously specified that the "contractor" was liable for restitution. In support of its argument, Appellant points to the Revisor's note to § 17–222 accompanying the 1988 revision, which stated generally that "[t]his section is derived without substantive change from the" former § 12–302(b) and (d).

of the State Finance and Procurement Article.[12] Chapter 48, § 2 of the Acts of 1988. A comparison of the Act prior to and after the revision reveals that the recodification did not simply renumber the Act from § 12 to § 17 of the State Finance and Procurement Article. It also reworded, rearranged, and added sections to the Act. *Compare* Maryland Code (1985, 1986 Supp.), State Finance and Procurement Article, §§ 12–301– 12–315, *with*, Maryland Code (1988, 1995 Repl. Vol.), State Finance and Procurement Article, §§ 17–201–17–226. Section 17–222, at issue in this case, was formed early in this recodification process. It provides:

§ 17–222. Liability for failure to pay prevailing wage rate.

(a) *Liquidated damages.*—A contractor under a public work contract is liable to the public body for liquidated damages of $10 for each laborer or other employee for each day for which:

(1) the laborer is paid less than the prevailing wage rate of a mechanic while performing a task required to be performed by a mechanic or mechanic's apprentice; or

(2) the employee is paid less than the prevailing wage rate.

(b) *Restitution.*—If a contractor or subcontractor pays an employee less than the amount the employee is entitled to receive for the work performed, the contractor or subcontractor shall make restitution to the employee.

The available legislative history of H.B. 1 of 1988 (which became Chapter 48, § 2 of the Acts of 1988) indicates that the

---

**12.** The Maryland Prevailing Wage Act, as first enacted in 1945, applied only to contractors working on state roads in Allegany, Garrett and Washington counties. *See* Chapter 999, § 1 of the Acts of 1945. Since then, the Prevailing Wage Act has been expanded through both amendments and recodifications. *See, e.g.,* Chapter 178, § 1 of the Acts of 1965; Chapter 558, § 1 of the Acts of 1969; Chapter 293, § 1 of the Acts of 1970; Chapter 775, § 14 of the Acts of 1980. The Act now requires that all contractors and subcontractors under a public works contract pay the applicable prevailing wage to their respective employees. *See* §§ 17–214–17–215.

inclusion of "or subcontractor" in what was to become § 17–222(b) occurred before first reading. This language apparently was devised either by the staff of the then Division of Statutory Revision, the Procurement Revision Review Committee, or the Procurement Code Revision Workshop, and included in H.B. 1 before first reader consideration by the legislature. After first reader, H.B. 1 was "reviewed extensively not only by the House Constitutional and Administrative Law Committee, to which [it] was referred, and its work · group, but also by the House Economic Matters Committee and a workgroup of that Committee." *Report on House Bill 1* (Third Reading File Copy), at 19 (15 March 1988). No change was made in the relevant language of § 17–222(b) from that which appeared in the first reader version. Although there are abundant references in the documentation pertaining to H.B. 1 that state, in one form or another, that the changes made in the course of the recodification of the State procurement law were intended to be stylistic, a re-organization, and non-substantive, we could find no such specific reference to the relevant new language of § 17–222(b), save possibly the general Revisor's note, *supra* at n. 11. In any event, we conclude that the inclusion of "or subcontractor" in § 17–222(b) effected a clear substantive change in the Prevailing Wage Act.

The "cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995) (citing *Fish Mkt. Nominee Corp. v. G.A.A.,* 337 Md. 1, 8, 650 A.2d 705, 708 (1994)). The first step in determining legislative intent is "to look at the statutory language." *Id.* Where statutory provisions are "clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Id.* (citing *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994)). In such circumstances, " 'no construction or clarification is needed or permitted, it being the rule that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation.' " *Giant Food, Inc. v. Dept. of Labor,*

356 Md. 180, 189, 738 A.2d 856, 861 (1999) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730, 732 (1986)). The language of a statute, therefore, is to be given "its natural and ordinary meaning." *Montgomery County, Maryland v. Buckman*, 333 Md. 516, 523, 636 A.2d 448, 452 (1994) (citing *Harford County v. Univ. Of Md. Med. Sys. Corp.*, 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *NCR Corp. v. Comptroller*, 313 Md. 118, 124, 544 A.2d 764, 767 (1988); *Utt v. State*, 293 Md. 271, 286, 443 A.2d 582, 590 (1982)).

■ The statute here is clear and unambiguous. Section 17–222(b) provides, "[i]f a contractor *or* subcontractor pays an employee less than" the prevailing wage, then "the contractor *or* subcontractor shall make restitution to the employee." (Emphasis added). The word "or" in this statute, and in common usage, is generally used to indicate an alternative. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1989). An "alternative" "offer[s] a choice between two or more things only one of which may be chosen." *Id.* Based on a plain reading of the statute, the alternative in § 17–222 is not open-ended, that is, Appellant is not free to choose whether to charge a contractor, subcontractor, or both for restitution, regardless of fault. Under the statute, if a contractor pays its employees less than the prevailing wage, then the contractor is liable for restitution. Likewise, if a subcontractor underpays its employees, then the subcontractor alone, not the contractor (absent actual culpability on the contractor's part), is liable to make restitution. To read § 17–222(b) otherwise would require us to "express an intention which is not evidenced in the original form." *Welsh v. Kuntz*, 196 Md. 86, 93, 75 A.2d 343, 345 (1950). That is an act which we are "not at liberty" to do. *Id.*

■ Appellant argues that the Legislature did not intend § 17–222(b) to shield a contractor from liability for restitution to its subcontractor's employees. When the language of a statute is clear and unambiguous, however, we normally do not look "beyond the words of the statute itself to determine legislative intent." *Giant Food, Inc.*, 356 Md. at 188, 738 A.2d

at 860. We presume that the General Assembly "had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law." *In re Special Investigation No. 236,* 295 Md. 573, 576, 458 A.2d 75, 76 (1983). As noted earlier, the 1988 Report on House Bill 1, which recodified the Prevailing Wage Act and added § 17–222, indicated that "[the Prevailing Wage] subtitle was reviewed extensively not only by the House Constitutional and Administrative Law Committee . . . and its work group[,] but also by the House Economic Matters Committee and a workgroup of that Committee." *Report on House Bill 1* (Third Reading File Copy), at 19 (15 March 1988). Based on the amount of time and personnel resources expended in drafting and scrutinizing the recodification of the Procurement Law, coupled with the fact that the recodification was not simply a mere renumbering, we are unable to find that the pertinent language in § 17–222(b) was anything but calculated and intended.

 The Court sometimes refers to a supplemental principle of statutory construction, in addition to the general principles and "cardinal rules," to guide it when the issue at hand involves a recodification or code revision. Specifically, that supplemental principle is:

> [Recodification] of statutes is presumed to be for the purpose of clarity rather than change of meaning and, thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code.

*Hoffman v. Key Fed. Sav. & Loan Ass'n,* 286 Md. 28, 37, 416 A.2d 1265, 1269 (1979). *See also Tipton v. Partner's Mgmt. Co.,* 364 Md. 419, 773 A.2d 488 (2001); *Riemer v. Columbia Med. Plan., Inc.,* 358 Md. 222, 747 A.2d 677 (2000); *Blevins & Wills v. Baltimore County, Maryland,* 352 Md. 620, 724 A.2d 22 (1999); *Giant Food, Inc. v. Dept. of Labor,* 356 Md. 180, 738 A.2d 856 (1999); *DeBusk v. Johns Hopkins Hosp.,* 342

Md. 432, 677 A.2d 73 (1996); *Rohrbaugh v. Estate of Stern,* 305 Md. 443, 505 A.2d 113 (1986); *Duffy v. Conaway,* 295 Md. 242, 455 A.2d 955 (1983); *In re Special Investigation No. 236,* 295 Md. 573, 458 A.2d 75 (1983); *Office & Prof. Employees Int'l Union v. MTA,* 295 Md. 88, 453 A.2d 1191 (1982); *Bureau of Mines v. George's Creek,* 272 Md. 143, 321 A.2d 748 (1974); *Welch v. Humphrey,* 200 Md. 410, 90 A.2d 686 (1952). This principle is both a rebuttable presumption and tempered by the scope of its appropriate application being described as "ordinarily." This principle, however, is not triggered if the plain meaning rule is dispositive of the relevant inquiry.

For example, in *Abramson v. Montgomery County, Maryland,* 328 Md. 721, 616 A.2d 894 (1992), Judge Chasanow, writing for the Court, considered whether the added term "person," in a requirement that a "person" exhaust all administrative remedies before appealing to the Tax Court, included governmental entities. Prior to the pertinent recodification, the statute used the term "party," which had been interpreted to include governmental entities. The Revisor's note to the amended section indicated there was no "substantive change" intended by the conversion from "party" to "person." Regardless of the Revisor's note, the Court refused to accept the argument that "person" likewise should be read to include a governmental entity. *Abramson,* 328 Md. at 737, 616 A.2d at 901–02. In so doing, the Court looked to the general principle of statutory interpretation that, "[w]hen a statute's language is clear and unambiguous, . . . we need look no further for some hidden legislative intent." *Abramson,* 328 Md. at 736–37, 616 A.2d at 901–02 (citing *Management Personnel Servs. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984)). The Court further supported its conclusion by noting that in another section of the same regulatory scheme, the General Assembly referred to a "person or governmental unit," indicating that the terms were not meant to be overlapping. *Abramson,* 328 Md. at 737, 616 A.2d at 902. No reference is made in *Abramson* to the supplemental principle of statutory interpretation regarding the presumption in cases concerning recodifications.

Similarly, in *In re Taylor*, 312 Md. 58, 537 A.2d 1179 (1988), Judge Orth, writing for the Court, found a substantive change in a statute, without reference to or analysis under the supplemental rule. In this case, the Revisor's note did not express a legislative intent. The Court determined that Maryland's tools-of-the-trade bankruptcy exemption could be applied to protect large, mobile farm implements and vehicles.[13] The recodified statute deleted the requirements that the exempted tools be "mechanical," and that the exempted appliances be "moved or worked by hand or foot." *In re Taylor*, 312 Md. at 67, 537 A.2d at 1183–84. The Court found that, although the Revisor's note did not indicate "whether the changes in the 'tools' exemption were or were not 'of a substantive nature,'" the "new enactment was more than a streamlining of the old statute." *In re Taylor*, 312 Md. at 68, 537 A.2d at 1184. The Court "s[aw] the legislative intent in enacting [the section] emanating bright and clear from the plain language of the subsection." *In re Taylor*, 312 Md. at 70, 537 A.2d at 1185. *See Board of Supervisors of Elections of Balt. City v. Weiss*, 217 Md. 133, 138, 141 A.2d 734, 737 (1958) (The Court read a substantive change into a statute, without applying the supplemental rule, when the Revisor's notes did not explicitly indicate such a change. In so doing, the Court noted that the revision of the law "was no mere casual rearrangement of sections," rather it included five years of study, and therefore it would be "unreasonable" to hold any changes "were inadvertent and not intended."). *See also Mid–Atlantic Power Supply Ass'n v. Public Serv. Comm'n of Md.*, 361 Md. 196, 760 A.2d 1087 (2000). In sum, we conclude the present case may be decided under the plain meaning rule.

Principles of statutory construction confirm that we may "consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an

13. The tools-of-the-trade exemption was designed to exempt "from execution on a judgement tools and other items 'necessary for the practice of any trade or profession.'" *In re Taylor*, 312 Md. 58, 63, 537 A.2d 1179, 1181–82 (1988) (citing Maryland Code (1974, 1984 Repl. Vol.), Courts and Judicial Proceedings Article, § 11–504(b)(1)).

illogical or unreasonable result, or one which is inconsistent with common sense." *Bd. of License Comm'rs v. Toye*, 354 Md. 116, 123, 729 A.2d 407, 411 (1999) (quoting *Tucker*, 308 Md. at 75, 517 A.2d at 732). Appellant's interpretation of § 17–222(b) would place strict liability on a contractor for its subcontractor's wage rate violations. This, in our opinion, is an unreasonable result and is not supported by the language of the statute.

Additionally, when § 17–222(b) is read in conjunction with § 17–222(a), it is apparent that the Legislature intended subsection (b) to place liability on subcontractors, not contractors, for their own wage rate violations. The liquidated damages provision in subsection (a) explicitly limits liability to "[a] contractor." This makes clear that the Legislature recognized in 1988 how to express its intent to hold a contractor strictly liable for damages, and that it chose not to utilize such an approach in subsection (b) with regard to restitution. Also, there are subsections of the Prevailing Wage Act in which the Legislature in 1988 explicitly placed joint liability on contractors and subcontractors. For instance, in §§ 17–214 and 17–215, the subsections requiring the full payment of prevailing wages on public works contracts, the Legislature stated that, "[e]ach contractor *and* subcontractor under a public work contract shall pay not less than the prevailing wage rate of . . . ," and "[e]ach contractor *and* subcontractor subject to this subtitle shall pay each employee not less than the prevailing wage rate required under this subtitle. . . ." (Emphasis added). With these, the Legislature evidenced its ability to require joint liability of contractors and subcontractors, but again, it chose not to employ such an approach in § 17–222(b). Because the Legislature did not use similar language in subsection (b) as in subsection (a), nor the phrase "contractor *and* subcontractor," we will not read § 17–222(b) as holding a contractor strictly or jointly liable for its subcontractor's wage violations.

Moreover, it is also a natural presumption that the Legislature "does not intend to use words in vain or to leave a part of its enactment without sense or meaning, but intends .

that every part of it shall be operative." *Welsh,* 196 Md. at 98, 75 A.2d at 348. It is for that reason that we avoid reading a statute in such a way as to render a word or phrase " 'surplus-age, superfluous, meaningless, or nugatory.' " *Atkinson v. State,* 331 Md. 199, 209, 627 A.2d 1019, 1024 (1993) (quoting *Sandefur,* 300 Md. at 341, 478 A.2d at 315). If we were to read § 17–222(b) as Appellant suggests, holding a contractor liable for restitution to its subcontractor's employees, we would essentially be reading "or subcontractor" out of the statute. We are not at liberty to modify the plain meaning of a statute in such a way.

We conclude that the language of § 17–222(b) of the Pre-vailing Wage Act unambiguously places liability for restitution on a subcontractor for its own prevailing wage rate violations, not on a contractor. Although we often give deference and considerable weight to an administrative agency's interpreta-tion of a statute which it administers, in this case, the lan-guage of § 17–222(b) is entirely clear. We, therefore, do not adopt the Commissioner of the Division of Labor and Indus-try's construction, and interpret § 17–222(b) based on the plain meaning of its words.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; APPELLANT TO PAY THE COSTS.*