514 A.2d 1215

ST. LEONARD SHORES JOINT VENTURE

v.

SUPERVISOR OF ASSESSMENTS OF CALVERT COUNTY.

No. 54, Sept. Term, 1985.

Court of Appeals of Maryland.

Sept. 30, 1986.

Stephen L. Clagett, Prince Frederick, for appellant.

Kaye Brooks Bushel, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH *, EL-DRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

The question presented in this case is whether the Supervisor of Assessments of Calvert County erred in determining the full cash value, for property tax purposes, of 105 unsold lots in a subdivision without taking into account the projected "sell-out period" of the lots.

We distill the facts giving rise to this issue as follows. In 1978, appellant, St. Leonard Shores Joint Venture, purchased a large tract of waterfront land in Calvert County, Maryland. In July and August of 1979, appellant recorded

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

subdivision plats, which subdivided the property into 117 lots. From the time of subdivision to January 1, 1982, only 12 of the lots were sold. Appellee, the Supervisor of Assessments of Calvert County ("Supervisor"), determined the full cash value of the remaining 105 lots to be $2,635,-000 as of January 1, 1982, the date of finality.[1] The Supervisor reached this figure by determining the full cash value of each individual subdivision lot and by combining these values. The Supervisor used this method of assessment based on a directive issued by the State Department of Assessments and Taxation (SDAT). The SDAT directive, issued November 13, 1980, provides,

> The valuation of subdivided lots should consider each lot as a single legal entity. Each lot should be valued at its full cash value as of the date of finality regardless of ownership. This valuation should consider the highest and best use of each individual lot. Bulk ownership should not be considered.

Appellant appealed the valuation of the lots to the Property Tax Assessment Appeal Board for Calvert County and argued that the Supervisor had assessed the lots at more than full cash value. The Board rejected appellant's argument and affirmed the Supervisor's assessment. Appellant then appealed to the Maryland Tax Court and that court, after a hearing held before one of its examiners, also affirmed the assessment. Still seeking redress, appellant next appealed to the Circuit Court for Calvert County. By opinion and order filed February 2, 1984, the circuit court reversed the Tax Court's decision. In so doing, the circuit court declared that the "sell-out period"—the estimated period of time required to sell all of the lots—must be considered in determining the full cash value of the lots and that the SDAT directive should be disregarded because it removes the "sell-out period" from the assessor's considera-

---

1. Maryland Code (1957, 1980 Repl.Vol.), Art. 81, § 14(b)(1)(i) provides, "All real property required by this article to be assessed shall be valued at its full cash value on the date of finality."

tion. Because the Supervisor failed to consider the "sell-out period" in assessing the property in question, the circuit court concluded that his assessment of the lots was erroneous. The Supervisor appealed the circuit court's decision to the Court of Special Appeals. In *Supervisor v. St. Leonard Shores Joint Ven.*, 61 Md.App. 204, 486 A.2d 206 (1985), the intermediate appellate court reversed the circuit court and held that the circuit court had erroneously reversed the Tax Court. We granted appellant's petition for certiorari in order to address the important question presented.

## I

Appellant contends that the Supervisor assessed the 105 unsold subdivision lots at more than their full cash value because the Supervisor failed to consider the length of time necessary to sell all of the lots. Because this case focuses upon the Supervisor's determination of the full cash value of the subdivision lots, we begin our analysis by examining the statutory requirement of "full cash value." Article 81, § 14(b)(1)(i) provides that "[a]ll real property required by this article to be assessed shall be valued at its full cash value on the date of finality." In *Rogan v. Commrs. of Calvert County*, 194 Md. 299, 71 A.2d 47 (1950), this Court addressed the determination of full cash value. Judge Delaplaine, writing for the Court, declared:

> Ordinarily the cash value of property is the market value. *Schley v. Montgomery County Com'rs*, 106 Md. 407, 410, 67 A. 250. But, as Justice White said in *San Francisco National Bank v. Dodge*, 197 U.S. 70, 25 S.Ct. 384, 386, 49 L.Ed. 669, the market value of property is the value a willing purchaser will pay for it to a willing seller in open market, eliminating exceptional and extraordinary conditions giving the property temporarily an abnormal value.

*Id.* [194 Md.] at 311, 71 A.2d at 54.

Since *Rogan*, we have repeatedly recognized the willing purchaser—willing seller standard as the ordinary mode

of measuring full cash value. *See, e.g., Supervisor v. Ort Children Tr.,* 294 Md. 195, 201, 448 A.2d 947, 950 (1982), *Samet v. Supervisor of Assess.,* 290 Md. 357, 359–60, 430 A.2d 73, 74 (1981); *Shell Oil Co. v. Supervisor,* 278 Md. 659, 666, 366 A.2d 369, 373–74 (1976); *State Dept. of A & T v. Greyhound Comp.,* 271 Md. 575, 586, 320 A.2d 40, 45–46 (1974); *Tax Comm. v. Brandt Cabinet Works,* 202 Md. 533, 545, 97 A.2d 290, 295 (1953). Thus, for purposes of measuring full cash value, the assessor should assume that a willing buyer and a willing seller wish to engage in a hypothetical sale of the property to be assessed.

■ In disputing the Supervisor's assessment of the 105 unsold lots, appellant emphasizes that "[t]he problem . . . is that you didn't have 105 buyers, you had twelve—seven the first year and five the next year." Appellant's argument misses the point. Regardless of whether a buyer for each lot actually exists, the assessor is required to assess each lot *as if* a willing buyer exists. This is not to say that a glut on the market should not be considered. We think, however, that the condition of the real estate market is adequately reflected in the price that the hypothetical buyer would be willing to pay. Therefore, we reject appellant's contention relating to the "sell-out period" of the lots.

II

Appellant also contends that the Tax Court's decision is not supported by substantial evidence, as required by Maryland Code (1957, 1980 Repl.Vol., 1985 Cum.Supp.), Art. 81, § 229(*o* ). This section provides, "In any case, the circuit court for the county shall determine the matter upon the record made in the Maryland Tax Court. The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law *and if it is supported by substantial evidence appearing in the record." Id.* (emphasis supplied).

■ We have often addressed the scope of judicial review where an administrative agency's decision is attacked on the ground that it is not supported by substantial evidence.

*See e.g., Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 838–39, 490 A.2d 1296, 1302 (1985); *Balto. Lutheran High Sch. v. Empl. Sec. Adm.,* 302 Md. 649, 660–63, 490 A.2d 701, 708 (1985); *Comptroller v. Haskin,* 298 Md. 681, 693–94, 472 A.2d 70, 76–77 (1984); *Annapolis v. Annap. Waterfront Co.,* 284 Md. 383, 397–400, 396 A.2d 1080, 1088–89 (1979); *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512–17, 390 A.2d 1119, 1123 (1978); *Shell Oil Co. v. Supervisor,* 278 Md. 659, 670, 366 A.2d 369, 375 (1976); *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 309–10, 236 A.2d 282, 291–92 (1967). As set forth in these cases, our task is to determine "whether a reasoning mind reasonably could have reached the factual conclusion that the agency reached." *Balto. Lutheran High Sch. v. Empl. Sec. Adm., supra,* 302 Md. at 662, 490 A.2d at 708 (citing *Bulluck v. Pelham Wood Apts., supra* ). *See also Comptroller v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77, 81 (1977); *Fairchild Hiller Corp. v. Supervisor,* 267 Md. 519, 521, 298 A.2d 148, 149 (1973). In carrying out this task, it is not our function to engage in judicial fact-finding or to substitute our judgment for that of the agency. *See Ramsay, Scarlett & Co. v. Comptroller, supra,* 302 Md. at 838, 490 A.2d at 1303; *Annapolis v. Annap. Waterfront Co., supra,* 284 Md. at 398, 396 A.2d at 1089; *Comptroller v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77, 81 (1977); *Insurance Comm'r v. Nat'l Bureau, supra,* 248 Md. at 309–10, 236 A.2d at 292. Moreover, we have stated that it is "the province of the agency to resolve conflicting evidence, [and] where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences." *Bulluck v. Pelham Wood Apts., supra,* 283 Md. at 513, 390 A.2d at 1124, *quoted in Balto. Lutheran High Sch. v. Empl. Sec. Adm., supra,* 302 Md. at 663, 490 A.2d at 708.

With these principles in mind, we examine the facts of the instant case. Appellant argues that the record provided no basis upon which the circuit court might have affirmed the Tax Court's decision. We disagree. Appel-

lant's argument simply overlooks a key portion of the record before the Tax Court: the testimony of the Supervisor as to the manner in which he assessed the property. The Supervisor testified that he valued "each of the hundred and five lots, as of the date of finality, . . . based upon its market value; which was determined by the sales in St. Leonard Shores as well as comparable subdivisions." The record indicates that twelve lots in St. Leonard Shores had been sold within three years of the date of finality. We think that these sales, as well as the sales in similar subdivisions, provided an ample basis from which the Tax Court could reasonably conclude that the Supervisor had correctly assessed the subdivision lots.

■ Moreover, the Tax Court expressly rejected the method of valuation upon which appellant relies. The hearing examiner, in his written opinion and recommendation, declared that

[appellant]'s approach to fair market value is a staged sell-out over a period of years, with [appropriate] conveying charges etc., and finally reducing the end result to a net profit figure. This is good, sound business practice. Unfortunately, it is not the way the assessment process works. To implement [appellant]'s approach to value, would be to put the Assessor in the position of being a joint venturer with [appellant]: if all the lots sold in one year, we have a value certain; if all lots sell over a period of years, we have a value dependent upon the future whims of the market place.

We have often stated that the assessment of property is not an exact science and that assessors have reasonable latitude in selecting a method of valuation that arrives at full cash value. *See, e.g., Supervisor v. Southgate Harbor,* 279 Md. 586, 593, 369 A.2d 1053, 1057 (1977); *Macht v. Dep't of Assessments,* 266 Md. 602, 608–09, 296 A.2d 162, 166 (1972); *Sears, Roebuck v. State Tax Comm.,* 214 Md. 550, 557–58, 136 A.2d 567, 571 (1957). Here, the Supervisor chose to use the comparable sales approach in valuing each of the unsold

lots in the subdivision. We think that this method of valuation provided a reasonable means of determining full cash value. Further, it complied with the SDAT directive, which required the assessment of subdivision lots on an individual basis. We conclude that the Tax Court was correct in affirming the Supervisor's assessment.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. APPELLANT TO PAY THE COSTS.